**No. 26-1987**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

STATE OF CALIFORNIA; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEVADA; STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN; JOSH SHAPIRO, in the official capacity of as Governor of the Commonwealth of Pennsylvania,

*Plaintiffs-Appellees*,

v.

UNITED STATES POSTAL SERVICE; DAVID STEINER, in the official capacity as Postmaster General, Chief Executive Officer of the Postal Service, and Member of the Postal Service Board; DOUG TULINO, in the official capacity as Deputy Postmaster General, Chief Operating Officer and Chief Human Resources Officer of the Postal Service and Member of the Postal Service Board of Governors; AMBER MCREYNOLDS, in the official capacity as Chair of the Postal Service Board of Governors; DEREK KAN, in the official capacity as Vice Chairman of the Postal Service Board of Governors; RONALD STROMAN, in the official capacity as a Member of the Postal Service Board of Governors; DANIEL TANGHERLINI, in the official capacity as a Member of the Postal Service Board of Governors,

*Defendants-Appellants*.

---

Appeal from the United States District Court
For the District of Massachusetts

---

**CONSENTED TO BRIEF FOR *AMICUS CURIAE* THE SOCIETY FOR RULE OF LAW IN OPPOSITION TO EMERGENCY MOTIONS FOR STAY PENDING APPEAL AND SUPPORTING APPELLEES**

---

*(Counsel listed on inside cover)*

NANCY A. TEMPLE
*Of Counsel*
Katten & Temple, LLP
33 N. Dearborn St., Suite 1800
Chicago, IL 60602

RICHARD BERNSTEIN
1st Circuit No. 1135512
Counsel of Record
1875 K Street, NW
Washington, D.C. 20006
(301) 775-2064
Rbernsteinlaw@gmail.com

September 1, 2026

Counsel for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amicus* The Society for the Rule of Law and Democracy, Inc., doing business as The Society for the Rule of Law, does not have a parent corporation, is not a publicly traded company, and no publicly held corporation owns 10% or more of its stock.

## TABLE OF CONTENTS


CORPORATE DISCLOSURE STATEMENT………………………………………. i

TABLE OF CONTENTS……………………………………………………… ii

TABLE OF AUTHORITIES……………………………………………….. iii

INTEREST OF *AMICUS CURIAE*……………………………………………… 1

INTRODUCTION AND SUMMARY OF ARGUMENT………………………. 1

ARGUMENT……………………………………………………………. 2

I. The Constitution And Federal Election Statutes Preclude The USPS Rule………………………………………………………. 2

A. HAVA…………………………………………………….. 3

B. NVRA…………………………………………………….. 6

C. VRA ……………………………………….................... 6

II. Title 39 Provision Precludes USPS Authority To Bar Ballot Delivery……………………………………………………. 7

III. Clear Statutory Authorization Is Required And Absent…………… 11

CONCLUSION…………………………………………………………….. 12

## TABLE OF AUTHORITIES


Page(s)

Cases

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) ....................11

*Bond v. United States*,
572 U.S. 844 (2014) ....................11

*Bost v. Illinois State Board of Elections,*
607 U.S. 71 (2026) ....................12

*Esteras v. United States*,
606 U.S. 185 (2025) .................... 9

*Gonzales v. Oregon*,
546 U.S. 243 (2006) ....................11

*Hannegan v. Esquire, Inc.*,
327 U.S. 146 (1946) .................... 8

*RadLAX Gateway Hotel*, *LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) .................... 9

*Shelby County v. Holder,*
570 U.S. 529 (2013) ....................11

*Trump v. California*,
2026 WL 2473573 (U.S. Aug. 24, 2026) .................... 2

*United States v. Gradwell*,
243 U.S. 476 (1917) ....................11

*United States v. Town of Thornapple*,
143 F.4th 793 (7th Cir. 2025) .................... 4

*Watson v. Republican Nat'l Comm.,*
146 S. Ct. 2165 (2026)....................3, 7

*West Virginia v. EPA*,
597 U.S. 697 (2022) ....................11

Statutes

2 U.S.C. §§1-9, 381-96 ....................12
3 U.S.C. §§1-22 ....................12
18 U.S.C. §611 .................... 9
18 U.S.C. §1716....................10
18 U.S.C. §1716(a)-(b) ....................10
18 U.S.C. §§592-611 ....................12

39 U.S.C. §401(2) .......... 9
39 U.S.C. §3001(n)(1) .......... 8
39 U.S.C. §3406.......... 2
39 U.S.C. §3629.......... 2
39 U.S.C. § 3001(g)(2) .......... 8
39 U.S.C. §§3001-3018 ..........2, 7
39 U.S.C. §§3001(a), 3003(a) ..........9, 10
39 U.S.C. §§3001(d)(2), 3001(g)(2), 3001(h)(1)(b), 3001(i)(1)(b), 3001(n)(1), 3002(b), 3010(a), 3014(c), 3018(a)&(b)(1).......... 8
52 U.S.C. §10502(b)-(f).......... 6
52 U.S.C. §20508(a)(1)-(3).......... 6
52 U.S.C. §21081(a) .......... 4
52 U.S.C. §21081(b)(2)(E).......... 4
52 U.S.C. §21083(a)(1)(A) .......... 4
52 U.S.C. §21085.......... 3
52 U.S.C. § 10502(g) .......... 6
52 U.S.C. §§20506(a)(1), 20507(a).......... 6
52 U.S.C. §§21084-21085, 20507(a), 10502(g) ..........1, 5
52 U.S.C..§20511.......... 9
52 USC §21145(a) ..........1, 5

Other Authorities

75 Fed. Reg. 283..........10
90 Fed. Reg. 9843..........10
91 Fed. Reg. 54966-70.......... 3
91 Fed. Reg.54973-74.......... 8
A. Scalia & B. Garner, Reading Law (2012)……………7
DMM 705.24.5…………… 4
EO 14399.......... 3
H.R. Rep. No. 107-329 .......... 6
2 The Records of the Federal Convention of 1787 (M. Farrand ed., 1911)………12

## INTEREST OF *AMICUS CURIAE*

*Amicus* The Society for the Rule of Law and Democracy, Inc., d/b/a The Society for the Rule of Law ("SRL"), is a national non-profit, non-partisan membership organization of right-of-center-lawyers, and others, who are dedicated to defending the rule of law, separation of powers, and federalism.[1] SRL has an interest in seeing that the USPS does not violate these principles by violating the Constitution, federal election statutes, and Title 39.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This brief focuses on three reasons why the USPS rule lacks authority. First, rather than delegate authority to USPS, in the federal election statutes of the Help America Vote Act of 2002 ("HAVA"), the National Voter Registration Act of 1993 ("NVRA"), and the Voting Rights Act ("VRA"), Congress itself addressed the very subjects of the USPS rule—voter lists, delivery of paper ballots to voters, and absentee balloting. Otherwise, Congress specifically allocated these subjects to the States only, not USPS. *See* 52 U.S.C. §§21084-21085, 20507(a), 10502(g). Moreover, in 52 USC §21145(a), HAVA specifically superseded resort to all the Title 39 non-election provisions on which movants rely.

---

[1] All parties have consented to filing this brief. *Amicus* states that no counsel for any party authored this brief in whole or in part, and that no entity, aside from *amicus* and its counsel, made any monetary contribution toward its preparation or submission. The views of SRL do not necessarily represent the views of all individual members.

Second, election mail was deliberately withheld from the nonmailability provisions in 39 U.S.C. §§3001-3018. Those provisions are the only place in Title 39 where—at least nine times—Congress expressly gives the USPS authority to condition the mailing of a category of items. Election mail is *not* one of these categories. Instead, the only Title 39 election provisions are 39 U.S.C. §3629, which NVRA enacted and requires USPS to give favorable postage rates to registration mail, and 39 U.S.C. §3406, which UOCAVA enacted and requires expeditious and free carriage of UOCAVA voting materials. The non-election, boilerplate Title 39 provisions on which the USPS relies are not a secret, alternative way for the USPS to bar ballot mail.

Third, under the federalism presumption and the major question doctrine, the USPS needed a clear statement of statutory authority. The boilerplate provisions in Title 39 do not come close.

## ARGUMENT

### I. The Constitution And Federal Election Statutes Preclude The USPS Rule.

The Elections Clause empowers only Congress to "alter" state election practices. The USPS rule is an illegal election-only rule that alters state election practices, not a general rule like postage. The movants stated that they needed the final rule for the 2026 election. *Trump v. California*, 2026 WL 2473573, at *4 (U.S. Aug. 24, 2026)(per curiam). The USPS rule is replete with purported

election integrity justifications. 91 Fed. Reg. 54966-70. The rule derives from EO 14399, which is entitled: "Ensuring Citizenship Verification And Integrity In Federal Elections." The rule applies to ballot mail *only*.

Clear preclusion of federal agency authority occurs where, as here, federal election statutes expressly allocate election practices to the states, without any suggestion that a federal agency may, by regulating under *non-election statutes,* alter state election practices. In that circumstance, the Constitution and Congress necessarily withhold from federal agencies regulatory power to alter state election practices. *See Watson v. Republican Nat'l Comm.,* 146 S. Ct. 2165, 2181 (2026)(federal election law extends "so far as it is exercised, and no farther")(quotations omitted). The USPS rule is illegal because in HAVA, NVRA, and the VRA, Congress withheld from the USPS authority to alter state election practices concerning any voter list, system for delivering paper ballots, or absentee balloting restriction.

**A. HAVA.**

HAVA regulates voter lists and the delivery of paper ballots to voters. Most important, 52 U.S.C. §21085 states: "The specific choices on the methods of complying with the requirements of this subchapter *shall be left to the discretion of the State*." (Emphasis added.)

HAVA directs that "a *single*, . . . official . . . statewide voter registration

list" for each state be "defined, maintained, and administered at the State level." 52 U.S.C. §21083(a)(1)(A)(emphasis added). This "computerized list shall serve as *the single system* for storing and managing *the official list* of registered voters throughout the State" and "shall serve as *the official voter registration list* for the conduct of all elections for Federal office in the State." *Id.* §21083(a)(1)(A)(i), (viii)(emphases added). The USPS rule illegally uses Title 39 non-election provisions to impose a second federally-mandated statewide voter list for each state, *i.e.*, a list of those enrolled to vote by mail. A state cannot have *any* mail-in voting unless the state enrolls through a portal a "List" of mail-in voters, and then only for voters verified by the USPS as "enrolled" on the "List." DMM 705.24.5. The USPS rule thus also violated HAVA by having the USPS administer the new voter lists.

52 U.S.C. §21081(a) also establishes the only federal "requirements" for "[e]ach voting system used in an election for Federal office." The term "voting system" includes "the practices and associated documentation used . . . to make available any materials to the voter (such as notices, instructions, forms, or *paper ballots*)." 52 U.S.C. §21081(b)(2)(E)(emphasis added). Every method used for delivering "paper balloting" is a "voting system" under HAVA. *United States v. Town of Thornapple*, 143 F.4th 793, 798-99 (7th Cir. 2025).

The documentation and practices used for delivering paper ballots to mail-in

voters, including mailing and envelopes, constitute a "voting system." Here, under the USPS rule, the barcoded Outbound Federal Ballot Mail Envelopes, portal information, and Mail-in and Absentee Participation List, singly and combined, illegally constitute a new, more restrictive "voting system" because they are documentation and practices used to make notices, instructions, forms, and mail-in paper ballots available to *fewer* voters. But 52 U.S.C. §21084 provides that only "a *State*"—not a federal agency—may "establish[] election technology and administration requirements that are more strict than the requirements under this subchapter."

Finally, 52 U.S.C. §21145(a) states that "nothing in this chapter may be construed to authorize or require conduct prohibited under any of *the following laws*, or to supersede, restrict, or limit the application of *such laws*." (Emphases added.) The six, specified, saved federal statutes that comprise "the following laws" and "such laws" are only UOCAVA, VRA, NVRA, the Voting Accessibility for the Elderly and Handicapped Act, and two primarily non-election disability statutes. *Id.* Thus, on HAVA topics, the application of federal statutes *not* listed in "the following" six specified statutes *is* superseded, restricted, and limited. Section 21145(a) *omits* all the Title 39 provisions on which the movants rely from the list of federal statutes that § 21145(a) saves. Enforcing this deliberate withholding fulfills a central HAVA purpose that state and local administration of

federal elections "must be preserved" so that it remains "*impossible* for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, pt. 1, at 31-32 (2001)(emphasis added).

**B. NVRA.**

NVRA charges only *state* agencies with "the registration of voters in elections for Federal office" and "the *administration* of voter registration for elections for federal office." 52 U.S.C. §§20506(a)(1), 20507(a)(emphasis added). 52 U.S.C. §20508(a)(1)-(3) limits the federal authority to issue "regulations" on NVRA topics to the Election Assistance Commission and one subject – "a mail voter registration application form." NVRA withheld all rulemaking authority from USPS concerning imposing and administering voter lists.

**C. VRA.**

52 U.S.C. §10502(b)-(f) sets forth federal standards that require states to make available "absentee balloting in presidential elections." Most important, 52 U.S.C. §10502(g) allows "any *State* or political subdivision" to "adopt[] *less restrictive* voting practices than those that are described herein." (Emphasis added.) Unlike subsections (b)-(f) of §10502, subsection (g) is not limited to presidential elections, thus confirming that the absentee balloting authority allocated to the states covers all federal elections. The executive branch is denied

authority to adopt more restrictive absentee balloting practices. The USPS rule illegally does this.

## II. Title 39 Provision Precludes USPS Authority To Bar Ballot Delivery.

*Assuming* that the non-election provisions of Title 39 regulate elections in some way, related statutes are to be "interpreted together, as though they were one law." A. Scalia & B. Garner, *Reading Law* 252 (2012). This "most rudimentary rule of statutory interpretation" applies to federal elections. *Watson*, 146 S. Ct. at 2173. "[T]he body of the law should make sense" and "it is the responsibility of the courts, within the permissible meanings of the text, to make it so." *Reading Law*, at 252. It makes no sense for the detailed election provisions of federal election statutes to withhold any role for USPS in requiring or administering voter lists, restricting delivery of paper ballots, and restricting absentee balloting, just to adopt a strained reading of non-election provisions in Title 39 to authorize all three.

Even looking at Title 39 alone, Congress in the nonmailability provisions withheld authority from USPS to bar even some ballot mail. Those provisions are the exclusive place in Title 39 where Congress gave USPS authority to bar mailing of those items in named categories that do not meet the regulatory conditions that the USPS imposes. 39 U.S.C. §§3001-18 specify *all* the Title 39 categories that are "nonmailable." "The postal laws make a clear-cut division between mailable and

nonmailable material." *Hannegan v. Esquire, Inc.*, 327 U.S. 146, 152 (1946). The "power" to make nonmailability rules "has been zealously watched and *strictly confined*" by Congress. *Id.* at 156 n. 18 (emphasis added).

The USPS rule did not and could not argue that any of the Title 39 provisions on which the rule relies authorize nonmailability for any ballots. 91 Fed. Reg. 54974. Instead, USPS argued that conditioning the acceptance of an entire category for mailing on satisfying USPS regulations is not a nonmailability rule. 91 Fed. Reg. 54973. The statutory nonmailability provisions foreclose this argument. At least nine statutory nonmailability provisions take an indistinguishable approach from the USPS rule. Those nine statutory nonmailiability provisions bar the mailing of a category of items except when a sender satisfies the conditions set by USPS regulations, including conditions about what is on the envelope. *See* 39 U.S.C. §§3001(d)(2), 3001(g)(2), 3001(h)(1)(b), 3001(i)(1)(b), 3001(n)(1), 3002(b), 3010(a), 3014(c), 3018(a)&(b)(1). This is how the statute renders some items in specified categories nonmailable—from fragrance advertising samples to hazardous materials. For example, 39 U.S.C. § 3001(g)(2) states: "The Postal Service shall by regulation establish the standards or requirements which a fragrance advertising sample must satisfy in order for the mail matter involved not to be considered nonmailable under this subsection." *See also* 39 U.S.C. §3001(n)(1)("Except as otherwise authorized by law or regulations

of the Postal Service, hazardous material is nonmailable.”). Despite the withholding of statutory nonmailability authority, the USPS rule illegally uses the same exact nonmailability approach to bar all Outbound Federal Ballot Mail unless USPS's regulatory conditions are satisfied.

Congress would not have confined conditional nonmailability to nine specific statutory nonmailability provisions if the USPS had authority to use other, general, indeed boilerplate provisions like 39 U.S.C. §401(2)(“the boilerplate provisions”) to impose the exact same requirements, including for categories in what would become nine superfluous nonmailability provisions. Doing so creates “the superfluity of a specific provision that is swallowed by the general one.” *RadLAX Gateway Hotel*, *LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). It also violates the negative-implication canon with “particular force” because §§3001-18 “constitute an established series, such that any omission from that series necessarily bespeaks a negative implication.” *Esteras v. United States*, 606 U.S. 185, 195 (2025) (quotations omitted). And §401(2) precludes regulations “inconsistent with this title.”

Another inconsistency is that 39 U.S.C. §§3001(a), 3003(a) limit criminal-based nonmailability to when a specific mailing is in “violation” of one of ten *specified* criminal-law statutes. 39 U.S.C. §§3001(a), 3003(a). Mere investigation is never enough. And the two potential crimes cited here—18 U.S.C. §611; 52

U.S.C..§20511—are *not* among the ten specified criminal statutes.

Movants misplace reliance on Federal Register statements restricting the mailing of cremated remains and replica or inert explosive devices. These prove the opposite because both restrictions are based on an express nonmailability statute, 18 U.S.C. §1716, which 39 U.S.C. §3001(a) incorporates, *not* on the boilerplate provisions of Title 39. The Federal Register statements identify the remains and devices as "Restricted Matter." 90 Fed. Reg. 9843 (2025); 75 Fed. Reg. 283 (2010). Section 21 of USPS Publication 52, which is part of the CFR and cited in 90 Fed. Reg. 9843, relies on 18 U.S.C. §1716 as the authority for making these and other "restricted" matter "nonmailable." *See* Section 434 ("Replica Or Inert Explosive Devices"); Section 451.22 ("Cremated Remains"). 18 U.S.C. §1716(a)-(b) makes materials "which may kill or injure another, or injure the mails or other property . . . nonmailable matter," and authorizes USPS regulations to permit mailing such materials under restrictions. The remains were potentially injurious and the devices had resulted in disruptions and evacuations of postal facilities. 75 Fed. Reg. 283. None of that applies to ballot mail. Therefore, USPS did not and could not classify ballot mail as "restricted matter" or rely on 18 U.S.C. §1716.

Finally, movants assert a false equivalence between the new USPS rule and the prior USPS practice of prioritizing election mail. Prioritizing election mail does *not* bar mail or alter any state election practice.

## III. Clear Statutory Authorization Is Required And Absent.

Title 39's boilerplate provisions were enacted under the Postal Clause, *not* the Elections Clause. Federalism and Tenth Amendment principles apply to federal elections. *Shelby County v. Holder,* 570 U.S. 529, 543 (2013). Accordingly, USPS's use of non-election Title 39 provisions must overcome the presumption that, absent a clear statement, a federal statute does not change the usual allocation of authority to the states. *See Bond v. United States*, 572 U.S. 844, 857-60 & n.2 (2014); *United States v. Gradwell*, 243 U.S. 476, 485 (1917) (non-election statute did not apply to federal elections because "whenever [Congress] has assumed to regulate elections, it has done so by positive and clear statutes").[2] The usual allocation is that states determine and administer election practices. The Title 39 boilerplate provisions do not come close to a clear statement. *See West Virginia v. EPA*, 597 U.S. 697, 723, 732 (2022)("modest words, vague terms, or subtle devices" do not provide a clear statement).

[2] There is an exception for statutes enacted "under the Elections Clause." *Arizona v. Inter Tribal Council of Arizona, Inc.,* 570 U.S. 1, 13-15 & n.6 (2013). But the Title 39 non-election provisions are enacted under the Postal Clause.

The major questions doctrine also requires clear authorization. That doctrine applies to important political issues, not just economic ones. *See West Virginia*, 597 U.S. at 722 (relying on an assisted suicide case, *Gonzales v. Oregon*, 546 U.S. 243 (2006)). "[T]he electoral process" is "of the most fundamental significance under our constitutional structure." *Bost v. Illinois State Board of Elections,* 607 U.S. 71, 77 (2026)(quotations omitted). At the Constitutional Convention, Madison explained that the Constitution gave election powers to Congress because "the influence of the Crown was most dangerously exerted" on elections. 2 The Records of the Federal Convention of 1787, at 204 (M. Farrand ed., 1911). In hundreds of election statutes, Congress has regulated elections without *ever* delegating new election rules to USPS. *See* 52 U.S. §§10101-30146; 2 U.S.C. §§1-9, 381-96; 3 U.S.C. §§1-22; 18 U.S.C. §§592-611. Congress would not hide the elephant of USPS authority to alter state election practices in a non-election mousehole in Title 39.

## CONCLUSION

The Court should deny a stay.

Dated: September 1, 2026

NANCY A. TEMPLE
*Of Counsel*
Katten & Temple, LLP
209 S. LaSalle Street Suite 950
Chicago, IL 60604

RICHARD BERNSTEIN
1st Circuit No. 1135512
Counsel of Record
1875 K Street, NW
Washington, D.C. 20006
(301) 775-2064
Rbernsteinlaw@gmail.com

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

IT IS HEREBY CERTIFIED:

1. That the foregoing Consented to Brief *Amicus Curiae* of The Society For The Rule of Law Institute in Opposition to Emergency Motions for Stay Pending Appeal and Supporting Appellees contains 2,595 words, excluding the parts of the brief exempted by Rule 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 365 in 14-point Times New Roman.

*/s/ Richard D. Bernstein*
Richard D. Bernstein
Attorney for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September 2026, I electronically filed the foregoing Brief *Amicus Curiae* of The Society For The Rule of Law Institute In Opposition to Emergency Motions for Stay Pending Appeal And Supporting Appellees, with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Richard D. Bernstein*
Richard D. Bernstein
Attorney for *Amicus Curiae*